Jeffrey K. Rubin (AK Bar # 8206061)
FRIEDMAN | RUBIN
Attorney for Plaintiffs
51 University Street, Suite 201
Seattle, WA 98101
Phone: (206) 501-4446
Fax:    (206) 623-0794
jrubin@friedmanrubin.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MAXINE SPENCER, individually and as Personal Representative of the Estate of Darrell Spencer, and on behalf of Beneficiaries of the Estate including Maxine Spencer;  DAPHNE McCANN and JOHN McCANN and the marital community composed thereof; MARCENE J. NASON and ALLAN NASON and the marital community composed thereof, and FOREST KIRST and TRACEY KIRST and the marital community composed thereof.<br><br>Plaintiffs,<br><br>vs.<br><br>OTTOSEN PROPELLER & ACCESSORIES INC., an Arizona Corporation, and HARTZELL PROPELLER INC., an Ohio Corporation; and THE OTTOSEN FAMILY FOUNDATION, an Arizona Corporation,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT** |

COMES NOW Plaintiffs, by and through the undersigned counsel and file this Complaint against Defendants Ottosen Propeller and Accessories, Inc., Hartzell Propeller, Inc. and the Ottosen Family Foundation, Inc. and allege upon information and belief:

1

## JURISDICTION AND VENUE

1. This is an action for damages in excess of One Million Dollars, ($1,000,000.00), exclusive of interest, costs, and attorneys' fees.

2. Jurisdiction exists over this action and Defendants under 28 U.S.C. §§ 1332 and 1367.

3. Venue is proper because Defendants conducted significant business in this district, and a substantial part of the events giving rise to the claim occurred in this judicial district. Plaintiff Kirst resides in this district. The crash occurred in this district.

4. All conditions precedent to bringing this action have been met.

## NATURE OF THE CASE

5. This is an action for negligence, fraud, violation of Alaska's Consumer Protection Act, strict liability, defective design, defective manufacture, misrepresentation, failure to warn, failure to inspect, failure to correct deficiencies, breach of warranties, negligent supervision, wrongful death, survivor damages, personal injuries and property loss arising from the crash of a Navion Aircraft, Registration N4827K ("the Navion") on August 24, 2014, near Atigun Pass, Alaska.

6. Defendant Ottosen Propeller and Accessories, Inc. ("Ottosen") sold an assembled propeller manufactured by Hartzell Propeller, Inc., Model HC-D2MV20-7, made up of component hub S/N AVA428 and blades S/Ns J41484 and J41474 ("the subject propeller") to Plaintiff Forest Kirst on April 6, 2011 for $24,000.00. Ottosen represented to Plaintiff Kirst that the subject propeller was new and sold it to him as new.

2

7.     Plaintiff Kirst installed the subject propeller on the Navion on June 6, 2011.  When he did so he merely installed the assembled propeller on the Navion. He did not disassemble the subject propeller or remove and reinstall the blades. He did not modify the subject propeller. He installed the subject propeller on the engine as he received it from Defendant Ottosen.

8.     Contrary to the representations made by Defendant Ottosen, the subject propeller was not "new."

9.     The subject propeller was manufactured by Defendant Hartzell Propeller, Inc. in the year 2000.

10.    At the time the subject propeller was sold to Mr. Kirst, it was comprised of used, not new parts.

11.    The subject propeller did not comply with all applicable service bulletins and service letters.

12.    Defendant Ottosen represented that the subject propeller complied with all applicable service bulletins and service letters.

13.    Defendant Ottosen represented that the subject propeller was safe for flight.

14.    At the time the propeller was sold to Mr. Kirst the subject propeller was not safe for flight and should not have been put into service.

15.    Upon reason and belief the subject propeller sat on the shelf at Ottosen for eleven years before it was sold to Mr. Kirst.

16.     Defendant Hartzell Propeller manufactured and designed the subject propeller and supplied it to Defendant Ottosen.

Case 3:16-cv-00188-TMB   Document 1   Filed 08/23/16   Page 3 of 31

17.     At all material times Defendant Hartzell Propeller recommended Defendant

Ottosen as a propeller supplier and repair station.

18.     At all material times Defendant Hartzell Propeller represented that Defendant

Ottosen met its stringent safety audits and received training from Defendant Hartzell.

19.     At the time of the crash the propeller had approximately 380 hours on it.

**PARTIES**

20.     Plaintiff Maxine Spencer ("Plaintiff Spencer") is the duly appointed Personal

Representative of the Estate of Darrell Spencer. Maxine Spencer is the surviving widow of

decedent Darrell Spencer. Decedent Darrell Spencer was a passenger on the Navion Aircraft that

crashed on August 24, 2014 and died as a result of injuries he received in that crash. The Estate

is in the Probate Court of New Brunswick. Plaintiff Maxine Spencer is a resident of the Province

of New Brunswick, Canada. Plaintiff Spencer brings this action on behalf of herself, the Estate,

all beneficiaries of the Estate and surviving family members.

21.     Plaintiff Daphne McCann was a passenger on the Navion Aircraft that crashed on

August 24, 2014 and sustained serious injuries in the crash. Plaintiff John McCann is her

husband. The McCann Plaintiffs are residents of the Province of New Brunswick, Canada.

22.     Plaintiff Marcene Nason was a passenger on the Navion Aircraft that crashed on

August 24, 2014 and sustained serious injuries in the crash. Plaintiff Alan Nason is her husband.

The Nason Plaintiffs are residents of the Province of New Brunswick, Canada.

23.     Plaintiffs Forest Kirst and Tracey Kirst are the registered owners of the subject

Navion Aircraft. Plaintiff Kirst was piloting the aircraft at the time of the crash and sustained

4

serious injuries in the crash. Plaintiff Tracey Kirst is his wife. The Kirst Plaintiffs are residents of Alaska.

24.     Defendant Ottosen is a seller, supplier and distributor of propellers, located in Phoenix Arizona. It is also a Federal Aviation Administration Certified Propeller Repair Station. It sold the subject propeller to Plaintiff Forest Kirst. Defendant Hartzell, Inc. at all material times has represented that Defendant Ottosen is a Hartzell Recommended Service Facility and Service Repair Station. Defendant Hartzell represented that Defendant Ottosen met "Hartzell's rigorous standards" as verified by Hartzell by meeting strict standards, including Hartzell audits, process approvals and training from Hartzell to properly service and maintain Hartzell products, including completion of major repairs, warranty work and full propeller overhaul. Defendant Ottosen sold the subject propeller into Alaska. Upon information and belief, Ottosen provides propellers and support for aircraft worldwide, including the United States and specifically Alaska. Defendant Ottosen is engaged in substantial and not isolated activity in the State of Alaska, including the sale of the subject propeller. Based on these contacts, jurisdiction in this court will not offend the notions of fair play and substantial justice.

25.     Upon information and belief Defendant Ottosen Family Foundation is a holding company for Defendant Ottosen and Defendant Ottosen is an alter ego, agent, mere instrumentality and/or mere department of Defendant Ottosen Family Foundation. Defendant Ottosen Family Foundation is responsible for the acts, omissions and other wrongful conduct of Defendant Ottosen.

26.     Defendant Hartzell Propeller, Inc. is an Ohio Corporation doing business at their World Headquarters location of One Propeller Place, Piqua, Ohio 45356 among other locations

throughout the United States, including throughout Alaska. Defendant Hartzell designed, manufactured, and provided the subject propeller. At all material times Defendant Hartzell's sales representatives and support representatives regularly attended trade shows in Alaska, where they recognize that there are more pilots and aircraft per capita than anywhere else in the world. Defendant Hartzell is engaged in substantial and not isolated activity in the State of Alaska. Based on these contacts, jurisdiction in this court will not offend the notions of fair play and substantial justice.

27.      The Ottosen and Hartzell Defendants were engaged in substantial and not isolated activity in the State of Alaska sufficient to subject them to the jurisdiction of this Court under AS 09.05.015 and meet the continuous and systematic contact requirement for jurisdiction under the Fourteenth Amendment of the United States. Jurisdiction is also proper pursuant to AS 09.05.015(a)(4)(A) and AS 09.05.015(a)(4)(B)

## FACTS GIVING RISE TO CAUSES OF ACTION

28.      On August 24, 2014, pilot, Forest Kirst, was flying over mountainous terrain at around 5,600 feet mean sea level when he experienced a sudden uncontrollable and uncommanded pitch down attitude.

29.      Mr. Kirst immediately reduced engine power, which slightly improved the situation, but did not arrest the descent rate of at least 1,000 feet/minute. Moving the control wheel fore and aft did not seem to help the pitch attitude. He left the engine throttled back without shutting it down so he could maintain hydraulic pressure to extend the wing flaps 20 degrees to further reduce airspeed.  The airspeed indicator needle was oscillating between 130 and 160 knots.

6

30.     Mr. Kirst concentrated on getting the airplane on the ground as safe and quickly as possible. The aircraft, a Navion aircraft, N4827K, sustained substantial damage after collision with terrain.

31.     At the time of the crash, the Navion was occupied by the pilot, Forest Kirst, and three passengers: Darrell Spencer, Daphne McCann, and Marcene Nason.

32.     All three passengers and the pilot sustained serious back and head injuries.

33.     Specifically, passenger Darrell Spencer's injuries included a skull fracture, a burst fracture of L-1, an occipital subarachnoid hemorrhage, a nasal bone fracture, a fracture of T12, a large scalp laceration, lacerations to right brow region and nasal area, and a rib fracture.  Darrell Spenser died approximately 5 weeks after the crash from a massive pulmonary embolism resulting from injuries he suffered in the crash.

34.     Passenger Daphne McCann's injuries included a T3 burst fracture, a T4 fracture, a C2 fracture, L4 and L2 fractures, multiple rib and sternal fractures, and bilateral pulmonary contusions.

35.     Passenger Marcene Nason's injuries included a L1 burst fracture, a T2 fracture, a left occipital condyle fracture, rib fractures,  hemopneumothorax, sternomanubrial fractures, a concussion, and a chip fracture of cervical spine.

36.     Pilot Forest Kirst's injuries included multiple broken vertebrae, multiple broken ribs, a skull fracture, a collapsed lung, and permanent nerve damage.

37.     Over the course of several hours after the crash, the pilot and passengers were evacuated by pipeline workers.

38.     The aircraft was owned and registered to Forest Kirst and Tracey Kirst.

39.     Ottosen sold the subject propeller to Mr. Kirst as new on April 6, 2011. Defendant Ottosen listed the manuals and service letters they followed on the FAA 8130-3 maintenance release.

40.     The propeller was installed on the subject aircraft on June 6, 2011 at 1,232.5 hours tach time. During its installation it was not modified, nor was it disassembled. It was merely installed, as a unit, onto the Navion Aircraft.

41.     The crash occurred at 1,612.3 hours tach time. The propeller only had approximately 379 hours on it.

42.     The subject propeller is comprised of two blades. Blade "B" was never located after the crash.  A clamp bolt that attached Blade B to the spinner hub was also never located. The clamp did not exhibit any impact damage, abnormal wear, or other mechanical damage where its missing bolt had been installed (see photo below). Photos taken by one of the passengers prior to the crash on August 24, 2014, demonstrate that all of the blade clamp bolts were installed on the propeller with bolt threads extending out of each self-locking nut.



43.     An examination of the propeller after the crash indicated that the propeller was comprised of used bolts.

44.     Old hardened grease was found in the blade clamp on Blade A, indicating that the propeller itself was old, not new. Manufacturer service bulletins predating the sale of the propeller had not been complied with by Ottosen, despite representations to the contrary on the subject propeller's maintenance release.

45.     Defendant Hartzell removed the propeller and examined it. It failed to return the pilot tubes which align the blades into the propeller hub.

46.     Post examination of the engine assembly revealed that the engine remained attached to its airframe mounts, but the overall airframe structure cradling the engine was partially torn off, consistent with an inflight propeller blade separation. The propeller spinner exhibited impact damage on one side, but did not show evidence of rotational damage or grease

leakage from the hub and blade clamp assembly, consistent with propeller blade clamp "B" not being loose during the accident flight or previous flights.

47.     After the crash it was determined that although the propeller was sold as new in 2011 the components on the propeller had a build date of 2000, meaning it was eleven years old not new.

48.     When Defendant Ottosen sold the subject propeller to Plaintiff Kirst it made material misrepresentations about its condition and whether it complied with service bulletins.

49.     One of the subject propeller's clamp bolts on Blade B failed in flight, causing Blade B to separate in flight and causing the crash which injured the Plaintiffs, eventually killing Darrell Spencer, and destroyed the Navion aircraft.

50.     Defendant Hartzell manufactured and designed the subject propeller which failed causing the aircraft to crash into the ground.

## COUNT I
## NEGLIGENCE
## OTTOSEN

51.     Plaintiff re-avers and re-alleges by reference all other paragraphs of the complaint as if fully restated herein.

52.     Defendant Ottosen distributed, marketed, assembled and sold the subject propeller and its components and systems.

53.     Defendant Ottosen has a duty to distribute, market, assemble and sell products that are not unreasonably dangerous.

54.     Defendant Ottosen owed a duty to the Plaintiffs to provide a propeller that was new, free of defects and safe for use in flight.

10

55. Defendant Ottosen breached a duty of care by willfully, wantonly, recklessly, and negligently failing to provide a propeller that was new, free of defects and safe for use in flight.

56. Defendant Ottosen failed to use ordinary care, it failed to do that which a assembler, distributer and seller of a propeller would have done under the same or similar circumstances and acted in a manner that such a corporation acting responsibly would not have acted under same or similar circumstances, including:

    a. Failure to provide adequate warnings for the propeller;

    b. Failure to provide adequate instructions for the propeller;

    d. Failure to properly assemble the propeller;

    e. Failure to properly test the propeller;

    f. Failure to properly inspect the propeller;

    g. Failure to adequately represent the propeller when marketing it.

57. The failure of the propeller during flight directly caused the crash of the aircraft and the death and injuries to the Plaintiffs.

58. Defendant Ottosen should have known, or in the exercise of reasonable care, would have known and it was reasonably foreseeable that its acts and omissions subjected the decedent, other passengers and the pilot to an unreasonable risk of personal injury or death.

59. Defendant Ottosen's behavior was negligent, grossly negligent, reckless and wanton, in that Defendant:

    a. Due to improper and inadequate supervision, oversight, and management, failed to provide a propeller that was new, free of defects and safe for flight;

b.  Due to improper and inadequate supervision, oversight, and management, failed to provide accurate information regarding the actual condition of the subject propeller.

c.  Made material misrepresentations about the condition of the subject propeller.

60.    Defendant Ottosen knew, should have known, or in the exercise of reasonable care, would have known, that given its failure to provide a propeller that was new, free of defects and safe for flight and its failure to provide accurate information regarding the actual condition of the propeller, that it was reasonably foreseeable that the decedent, pilot and passengers would face an unreasonable risk of personal injury or death.

61.    Defendant Ottosen breached its duties to the Plaintiffs who were injured and killed by its willful, wanton, reckless, and negligent misconduct and its agents  misconduct and this misconduct was a substantial contributing factor to and a proximate cause of the death of the decedent and injuries to the other Plaintiffs, and caused the damages sustained thereby.

62.    The Plaintiffs are without any fault, factual or legal, for any of the negligent acts and omissions, or any of the willful, wanton, reckless and negligent misconduct of Defendant Ottosen as set forth herein, all of which were a direct and proximate cause of the crash.

63.    As a direct and proximate result of Defendant Ottosen conduct, the Plaintiffs sustained foreseeable serious personal injuries due to blunt force trauma as the plane crashed to the ground, and as a result of these serious and personal injuries, Decedent Spencer died.

64.    As a direct and proximate result of Defendant Ottosen's conduct, Decedent Spencer was killed and the Plaintiffs suffered serious injuries and damages set forth in this Complaint.

## COUNT II
## STRICT LIABILITY
## DEFENDANT OTTOSEN

65.     Plaintiff re-avers and re-alleges by reference all other paragraphs of the complaint as if fully restated herein.

66.     At all relevant times herein, Defendant Ottosen was the assembler, repair certificate holder, distributor, seller, and/or marketer of the subject propeller.

67.     At the time of the crash, the propeller was in substantially the same condition as when it left Defendant Ottosen's possession.

68.     The subject propeller was in a defective condition at the time it left the control of Defendant Ottosen.

69.     At all times relevant, the operator used the propeller in a way that was reasonably foreseeable to Defendant Ottosen the propeller's assembly and condition was a substantial factor in causing the crash of the aircraft, the injuries to the Plaintiffs and death of Plaintiff's decedent, and damages to the Plaintiffs.

70.     At all times relevant, the subject propeller was unreasonably dangerous due to its assembly and condition.

71.     By virtue of the defects and condition of the subject propeller, the risks associated with the design, assembly and manufacture of the propeller and its parts outweighed the benefits due to the likelihood that harm would occur and the existence of alternative and safer designs that were available.

13

72. As assembled, marketed, distributed and sold, the subject propeller was dangerous and defective in that the propeller did not perform as expected or required, and did not perform as safely as an ordinary consumer would have expected on the day of the crash.

73. The subject propeller's failure to perform safely was a substantial factor in causing the injuries to the Plaintiffs and Plaintiff's decedent.

74. The lack of warnings and instruction and the affirmative misrepresentations were substantial factors in causing the crash and the resulting harm to Plaintiffs and Plaintiff's decedent.

75. Defendant Ottosen assembled, marketed, distributed and sold the subject propeller with the risks described herein, which were known or knowable by Defendant Ottosen and were within the realm of scientific knowledge available to Defendant.

76. The risks associated with the propeller presented a substantial danger to the pilot, the passengers, and their family members.

77. Ordinary consumers, including the Plaintiffs and the deceased passenger, would not have recognized the potential risks that the propeller would fail in flight and cause the plane to crash.

78. Defendant Ottosen failed to warn and instruct users of the risks associated with their products.

79. At the time the propeller and its component parts left the control of Defendant Ottosen, a safer alternative design of the product was available and would have prevented or significantly reduced the risk of personal injury or death without substantially impairing the

utility of the propeller. This safer alternative design was both economically and technologically feasible by the application of existing scientific knowledge.

80.   As a direct and proximate result of Defendant Ottosen's conduct, Plaintiff's decedent was killed, Plaintiffs suffered serious injury and harm and suffered the damages set forth in this Complaint.

**COUNT III**
**CONSUMER PROTECTION ACT**
**DEFENDANT OTTOSEN**
(Alaska Statutes 45.50.471)

81.   Defendant Ottosen engaged in a per se unfair and deceptive act when it represented and sold the subject propeller as "new" when in fact it was old, deteriorated, reconditioned, reclaimed and/or contained used parts.

82.   Defendant Ottosen engaged in an unfair and deceptive act when it engaged in conduct likely to cause confusion about the condition of the product it was selling.

83.   Defendant Ottosen engaged in an unfair and deceptive act when it represented that the subject propeller complied with applicable service bulletins and was airworthy when it did not comply with the bulletins and was not airworthy.

84.   Plaintiffs Forest Kirst and Tracey Kirst suffered an ascertainable loss of money and property as a direct result of the negligence, representations, marketing, actions and omission of Defendant Ottosen.

85.   Plaintiffs Forest Kirst and Tracey Kirst lost $24,000 (twenty-four thousand dollars), because they paid Defendant Ottosen $24,000 for a "new" propeller that was safe for flight and instead received an old propeller that was defective and not safe for flight. They relied

Case 3:16-cv-00188-TMB   Document 1   Filed 08/23/16   Page 15 of 31

upon the representations made by Defendant Ottosen when they decided to purchase the subject propeller and install it on the Navion Aircraft.

86.     Plaintiffs Forest Kirst and Tracey Kirst suffered the loss of the Navion Aircraft, valued at approximately $250,000 (two hundred and fifty-thousand dollars) as a direct result of the negligence, acts and omissions of Defendant Ottosen. The Navion Aircraft crashed and was a total loss because the subject propeller was used, defective and/or not safe for flight, in direct contrast to the representations made to Plaintiff Forest Kirst that it was new and safe for flight.

87.     Plaintiffs Forest Kirst and Tracey Kirst are entitled to all of the remedies available to them under Alaska's Consumer Protection Act.

**COUNT IV**
**MISREPRESENTATION/BREACH OF WARRANTIES**
**DEFENDANT OTTOSEN**

88.     Plaintiff re-avers and re-alleges by reference all other paragraphs of the complaint as if fully restated herein.

89.     Defendant Ottosen expressly and impliedly represented the propeller was new and that it and its component parts were safe and airworthy.

90.     Defendant Ottosen expressly and impliedly represented that the propeller and its component parts were assembled in a good and workmanlike manner and that they were fit and safe for the purpose for which it was intended.

91.     Defendant Ottosen failed to disclose to Plaintiffs that the propeller and its bolts were used and deficient and that the propeller could lose a blade in flight and its component parts were defective.

16

92.     At all times relevant herein, Defendant Ottosen held themselves out to purchasers and consumers of Hartzell Propeller as recommended propeller distributors and a recommended repair facility.

93.     In the condition in which the propeller was delivered to the owners and operator, the propeller was not suitable for its intended purpose and the Defendant Ottosen knew or had reason to know of the intended use of the propeller for a particular purpose.

94.     At the time of purchase, Defendant Ottosen knew or had reason to know that owners and operators, as well as the Plaintiff passengers and pilot, including Plaintiff's decedent, would rely on Defendant Ottosen's skill and judgment to select a product that was suitable for a particular purpose.

95.     The Plaintiff owner, operator, pilot, passengers and decedent justifiably relied on Defendant Ottosen's skill and judgment in making the decision to assemble, market, distribute, sell and supply the subject propeller and its component parts and upon its represented airworthiness.  With its inherent defects and lack of adequate warnings and instructions, the product was not suitable for a particular purpose.

96.     As a result of the unsuitability of the product and its failure to meet the intended purpose, Plaintiffs and Plaintiff's decedent were harmed, injured and died.  Plaintiffs were damaged as a result of Defendant Ottosen's failure to provide a product suitable for the particular purpose.

97.     Defendant Ottosen expressly represented that the propeller was safe and airworthy, when in fact it was not.

98.     Defendant Ottosen made assurances that the subject propeller was safe as assembled, manufactured and marketed and work was performed to the highest quality and highest standards.

99.     Defendant Ottosen's failure to deliver the product as expressly and impliedly represented was a substantial factor in causing the crash and the harm to Plaintiff's decedent and Plaintiffs.

100.    Defendant Ottosen breached their implied warranty of merchantability by failing to meet acceptable industry and supplier standards in the assembly, construction, and marketing of the subject propeller.

101.    Defendant Ottosen breached the implied warranty of fitness for a particular purpose by selecting and providing to Plaintiff Forest Kirst a propeller that was not for its intended purpose.

102.    As a direct and proximate result of Defendant Ottosen's conduct, Plaintiff's decedent was injured and killed and Plaintiffs were harmed and suffered the damages set forth below.

**COUNT V**
**FRAUD**
**DEFENDANT OTTESON**

103.    Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

104.    Defendant Ottosen expressly represented the propeller sold to the Kirsts was new and that Ottosen had complied with applicable manuals and service letters. These representations involved facts that were subject to being accurately ascertained and were material. As defendant

18

Ottosen should have reasonably foresaw, the Kirsts reasonably relied on these representations in deciding to purchase the propeller.

105.    These representations were not true.

106.    As a result of Defendant Ottosen's misrepresentations of fact, the Plaintiffs and decedent were injured.

**COUNT VI**
**NEGLIGENCE AND STRICT LIABILITY AND FRAUD AND VIOLATION OF**
**ALASKA'S CONSUMER PROTECTION ACT**
**OTTOSEN FAMILY FOUNDATION**

107.    Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

108.    Defendant Ottosen Family Foundation is a holding company for Defendant Ottosen and Defendant Ottosen is an alter ego, agent, mere instrumentality and/or mere department of Defendant Ottosen Family Foundation. Defendant Ottosen Family Foundation is responsible for the acts, omissions and other wrongful conduct of Defendant Ottosen.

109.    Defendant Ottosen Family Foundation is responsible for all of the acts and omissions of Defendant Ottosen described above as negligent, subject to strict liability, fraudulent and a violation of Alaska's Consumer Protection Act, in the prior paragraphs of this complaint.

**COUNT V**
**NEGLIGENCE**
**HARTZELL PROPELLER**

110.    Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

111.    Defendant Hartzell designed, manufactured, distributed, marketed, assembled and sold the subject propeller and its components and systems.

112.    Defendant Hartzell has a duty to manufacture, design, distribute, market, assemble and sell products that are not unreasonably dangerous.

113.    Defendant Hartzell failed to use ordinary care, it failed to do that which a designer, manufacturer, assembler, distributer and seller of a propeller would have done under the same or similar circumstances and acted in a manner that such a corporation acting responsibly would not have acted under same or similar circumstances, including:

    a.  Failure to provide adequate warnings for the propeller;

    b.  Failure to provide adequate instructions for the propeller;

    c.  Failure to properly design the propeller;

    d.  Failure to properly assemble the propeller;

    e.  Failure to properly test the propeller;

    f.  Failure to properly inspect the propeller;

    g.  Failure to adequately represent the propeller when marketing it.

114.    The failure of the propeller during flight directly caused the crash of the aircraft and the death and injuries to the Plaintiffs.

115.    As a direct and proximate result of Defendant Hartzell's conduct, the Plaintiffs sustained foreseeable serious personal injuries due to blunt force trauma as the plane crashed to the ground.

116.   As a direct and proximate result of Defendant Hartzell's conduct, Decedent Spencer was killed and the Plaintiffs suffered serious injuries and damages set forth in this Complaint.

**COUNT VI**
**STRICT LIABILITY**
**DEFENDANT HARTZELL**

117.   Plaintiff re-avers and re-alleges by reference all other paragraphs of the complaint as if fully restated herein.

118.   At all relevant times herein, Defendant Hartzell was the designer, manufacturer, assembler, certificate holder, distributor, seller, and/or marketer of the subject propeller.

119.   At the time of the crash, the propeller was in substantially the same condition as when it left Defendant Hartzell's possession.

120.   The subject propeller was in a defective condition at the time it left the control of Defendant Hartzell.

121.   At all times relevant, the operator used the propeller in a way that was reasonably foreseeable to Defendant Hartzell and the propeller's assembly, manufacture, design and engineering were substantial factors in causing the crash of the aircraft, the injuries to the Plaintiffs, death of Plaintiff's decedent, and damages to the Plaintiffs.

122.   At all times relevant, the subject propeller was unreasonably dangerous due to its design, assembly, manufacturing and engineering.

123.   By virtue of the defects and condition of the subject propeller, the risks associated with the design, assembly and manufacture of the propeller and its parts outweighed the benefits

due to the likelihood that harm would occur and the existence of alternative and safer designs that were available.

124.    As designed, assembled, marketed, manufactured, modified, distributed and sold, the subject propeller was dangerous and defective in that the propeller did not perform as expected or required, and did not perform as safely as an ordinary consumer would have expected on the day of the crash.

125.    The subject propeller's failure to perform safely was a substantial factor in causing the injuries to the Plaintiffs and Plaintiff's decedent.

126.    The lack of warnings and instruction and the affirmative misrepresentations were substantial factors in causing the crash and the resulting harm to Plaintiffs and Plaintiff's decedent.

127.    Defendant Hartzell designed, assembled, marketed, manufactured, distributed and sold the subject propeller with the risks described herein, which were known or knowable by the Defendant Hartzell and were within the realm of scientific knowledge available to Defendant Hartzell during the design, assembly, manufacture, marketing, distribution and sale of the subject propeller.

128.    The risks associated with the propeller presented a substantial danger to the pilot and the passengers, and their family members.

129.    Ordinary consumers, including the Plaintiffs and the deceased passenger, would not have recognized the potential risks that the propeller would fail in flight and cause the plane to crash.

130. Defendant Hartzell failed to warn and instruct users of the risks associated with their products.

131. At the time the propeller and its component parts left the control of Defendant Hartzell, a safer alternative design of the product was available and would have prevented or significantly reduced the risk of personal injury or death without substantially impairing the utility of the propeller. This safer alternative design was both economically and technologically feasible by the application of existing scientific knowledge.

132. As a direct and proximate result of Defendant Hartzell's conduct, Plaintiff's decedent was killed, Plaintiffs suffered serious injury and harm and suffered the damages set forth in this Complaint.

<u>COUNT VII</u>
<u>MISREPRESENTATION/BREACH OF WARRANTIES</u>
<u>DEFENDANT HARTZELL</u>

133. Plaintiff re-avers and re-alleges by reference all other paragraphs of the complaint as if fully restated herein.

134. Defendant Hartzell expressly and impliedly represented the propeller was new and that it and its component parts were safe and airworthy.

135. Defendant Hartzell expressly and impliedly represented that the propeller and its component parts were assembled in a good and workmanlike manner and that it was fit and safe for the purpose for which it was intended.

136.   Defendant Hartzell failed to disclose to Plaintiffs that the propeller and its bolts were used and deficient and that the propeller could lose a blade in flight and its component parts were defective.

137.   At all times relevant herein, Defendant Hartzell held themselves out to purchasers and consumers of Hartzell Propeller as a leader in the industry.

138.   In the condition in which the propeller was delivered to the owners and operator, the propeller was not suitable for its intended purpose and Defendant Hartzell knew or had reason to know of the intended use of the propeller for a particular purpose.

139.   At the time of purchase, Defendant Hartzell knew or had reason to know that owners and operators, as well as the Plaintiff passenger and pilot, including Plaintiff's decedent, would rely on Defendant Hartzell's skill and judgment to select, design and manufacture a product that was suitable for a particular purpose.

140.   The Plaintiff owner, operator, pilot, passengers and decedent justifiably relied on Defendant Hartzell's skill and judgment in assembling, manufacturing, designing, marketing, distributing, selling and supplying the subject propeller and its component parts and upon its represented airworthiness.  With its inherent defects and lack of adequate warnings and instructions, the product was not suitable for a particular purpose.

141.   As a result of the unsuitability of the product and its failure to meet the intended purpose, Plaintiffs and Plaintiff's decedent were harmed, injured and died.  Plaintiffs were damaged as a result of Defendant Hartzell's failure to provide a product suitable for the particular purpose.

142. Defendant Hartzell expressly represented that the propeller was safe and airworthy, when in fact it was not.

143. Defendant Hartzell made assurances that the subject propeller was safe as assembled, manufactured, designed and marketed and that Hartzell's work was performed to the highest quality and highest standards.

144. Defendant Hartzell's failure to deliver the product as expressly and impliedly represented was a substantial factor in causing the crash and the harm to Plaintiff's decedent and Plaintiffs.

145. Defendant Hartzell breached their implied warranty of merchantability by failing to meet acceptable industry and supplier standards in the assembly, manufacture, design, construction, and marketing of the subject propeller.

146. As a direct and proximate result of Defendant Hartzell's conduct, Plaintiff's decedent was injured and killed and Plaintiffs were harmed and suffered the damages set forth below.

## COUNT VIII
## NEGLIGENT SUPERVISION AND TRAINING
## DEFENDANT HARTZELL

147. Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

148. Defendant Hartzell was negligent in the supervision and training of Ottosen which, according to Defendant Hartzell, was Hartzell's recommended supplier and approved repair facility and which it represented met Defendant Hartzell's stringent audits and followed Hartzell's training procedures.

149.   Defendant Hartzell failed to supervise and ensure that the subject propeller complied with Federal Aviation Regulations and was sold as represented, with the highest degree of safety.

150.   Defendant Hartzell failed to audit Ottosen to ensure that it complied with Defendant Hartzell's safety practices.

151.   Defendant Hartzell failed to properly train Ottosen's employees to ensure that they followed Defendant Hartzell's training procedures.

152.   As a result of Defendant Hartzell's failure to properly supervise, audit and train Defendant Ottosen and its employees, Plaintiff's decedent was injured and killed.

153.   As a direct and proximate result of Hartzell's conduct, Plaintiff's decedent was injured and killed and Plaintiffs were harmed and suffered the damages set forth below.

**COUNT VIII**
**DAMAGE CLAIMS**
**WRONGFUL DEATH AND PERSONAL INJURY**
**ALL DEFENDANTS**

**A. SURVIVAL ACTION**
(Alaska Statutes 09.55.570)

154.   The Spencer Plaintiffs incorporate paragraphs 1-153 by reference as though fully set forth herein.

155.   The conduct of defendants as described above with respect to the design, marketing, sale, assembly and or maintenance of the subject propeller was in negligent, reckless and or intentional disregard of the rights of Darrell Spencer and such conduct caused Darrell Spencer grievous bodily injury.

156.   Decedent Darrell Spencer, during the course of the crash and for at least five weeks thereafter, suffered injury and damages caused by the acts of Defendants as set forth above and incorporated herein, which injury and damages include, but are not limited to:

     a.   Pain and suffering, including suffering in contemplation of his impending death;

     b.   Shock and terror; and

     c.   Mental and emotional distress.

157.   Decedent's cause of action for his injuries and damages survive his death and pass to his Estate, including his surviving widow.

## B. WRONGFUL DEATH ACTION
(Alaska Statutes 09.55.280)

158.   Decedent Spencer met his untimely death as a direct result of the aforementioned negligence, actions, and omissions of Defendants. Prior to his death he suffered serious injuries, including a back injury and head injury.

159.   Decedent Spencer's surviving family members have experienced great mental anguish, suffering, bereavement, and loss of society, advice, companionship, comfort, grief, sorrow, protection, and pecuniary benefit as a result of the death of Darrell Spencer.

160.   As a consequence of Defendants' actions as described above, Maxine Spencer, as the Personal Representative of the Estate of Darrell Spencer, and the statutory beneficiaries/surviving family members are informed and believe, pursuant to the Alaska Wrongful Death Statute, they are entitled to a judgment against Defendants for an award of economic and non-economic compensatory damages and punitive damages as provided by law in

an amount to be determined by the trier of fact and for any additional relief this Court deems just and proper.

161.    The Estate of Darrell Spence and the surviving family members of Darrell Spencer decedent have in the past, do in the present and will in the future continue to suffer the following specific damages:

a.    All economic and non-economic damages allowed by law;

b.    A measurable and significant period before and after the first and subsequent impacts, as well as before the death of Plaintiff's decedent, during which Plaintiffs and Plaintiff's decedent sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm and for Plaintiff's decedent, for a measurable period of time prior to death;

c.    Loss of being able to live life and the enjoyment of life;

d.    Loss of earnings of Plaintiff's decedent from the date of death, less lost support and services, excluding contributions in kind, with interest;

e.    Loss of gross earning power and earning capacity;

f.    Loss of net accumulations;

g.    Loss of past earnings;

h.    Loss of future and prospective earnings;

i.    Loss of inheritance;

j.    Full pecuniary loss of the decedent;

k.    Loss of prospective estate accumulations;

l.    Post-mortem, funeral, memorials and other expenses which have been incurred due to the Plaintiff's decedent's death that have become a charge against the Estate or that were paid by or on behalf of the decedents;

28

n.  Personal injury, including pain and suffering, loss of enjoyment of life and scarring;

p.  Property loss;

## C. PERSONAL INJURY ACTION

162.   Plaintiffs McCann, Nason, Kirst and Maxine Spencer incorporate paragraphs 1-161 by reference as though fully set forth herein.

163.   The conduct of defendants as described above with respect to the design, marketing,  sale, assembly, and or maintenance of the subject propeller was in negligent, reckless and or intentional disregard of the rights of  each of them and caused them injury and damages.

164.   Plaintiffs Daphne McCann, Marcene Nason, and Forest Kirst suffered serious and permanent injuries as a direct result of the aforementioned negligence, actions, and omissions of Defendants.

165.   Plaintiff John McCann is the spouse of Daphne McCann. Plaintiff Allan Nason is the spouse of Marcene Nason. Plaintiff Tracey Kirst is the spouse of Forest Kirst. Plaintiff Maxine Spencer is the widow of Darrell Spencer. Each of these spouses have experienced great mental anguish, suffering, loss of consortium, and lost pecuniary benefit as a result of the injuries to their spouses. For Maxine Spencer such loss of consortium claim as asserted herein includes the period between August 24, 2014 and the death of Darrell Spencer.

166.   The above referenced Plaintiffs believe they are entitled to a judgment against Defendants for an award of all economic and non-economic compensatory damages and punitive damages as provided by law in an amount to be determined by the trier of fact and for any additional relief this Court deems just and proper.

## D. FRAUD AND CONSUMER PROTECTION ACTIONS

167.  Plaintiffs Forest Kirst and Tracey Kirst incorporate paragraph 1-166 by reference as though fully stated herein.

168.  Plaintiffs Forest Kirst and Tracey Kirst suffered ascertainable financial and property losses as a direct result of the aforementioned misrepresentations of Defendant Ottosen, including a per se violation of Alaska's Consumer Protection Act.

169.  The Kirst Plaintiffs believe they are entitled to a judgement against Defendant Ottosen for an award of actual financial property loss, treble damages, attorneys' fees and costs and punitive damages in an amount to be determined by the trier of fact and for any additional relief that this Court deems just and proper.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against all Defendants for:

- all economic and non-economic compensatory damages provided by law;

- punitive and/or exemplary damages as provided by law;

-  treble damages as allowed by law; and

- prejudgment interest, costs, attorney fees, post-judgment interest and other such relief as the Court deems appropriate.

DATED this 22nd day of August, 2016

Respectfully submitted,

/s/ Jeffrey K. Rubin
Jeffrey K. Rubin
AK Bar# 8206061

30

FRIEDMAN | RUBIN
51 University Street, Suite 201
Seattle, WA 98101
Phone: (206) 501-4446
Fax: (206) 623-0794
jrubin@friedmanrubin.com


Alisa R. Brodkowitz, Esquire
Attorney for Plaintiffs
*Pro Hac Vice pending*
WA Bar# 31749
FRIEDMAN | RUBIN
81 Vine St. Suite 202
Seattle, WA 98121
Telephone:     (206) 838-7531
Facsimile:      (206) 838-7532
alisa@friedmanrubin.com

Attorneys for Plaintiffs